UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  09-60805-CIV-UNGARO/SIMONTON
(04-60186-CR-UNGARO)

**MARK ANTHONY MIGNOTT,**

    Movant,

v.

**UNITED STATES OF AMERICA,**

    Respondent.

_____/

REPORT AND RECOMMENDATION

Presently pending before this Court is Mark Anthony Mignott's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Prisoner In Federal Custody (DE # 1).  This matter is referred to the undersigned Magistrate Judge (DE # 4).  The motion is fully briefed (DE ## 2, 6, 7).  For the reasons stated below, the undersigned recommends that the Motion be DENIED.

    I.  BACKGROUND

On July 29, 2004, a federal grand jury returned a three hundred twenty-four count Indictment charging Movant Mignott and thirteen co-defendants with various Medicare fraud offenses.  The indictment charged Mignott with:  conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count 1); making false claims under Medicare, in violation of 18 U.S.C. § 287 (Counts 2-127); conspiracy to pay kickbacks, in violation of 18 U.S.C. § 371 (Count 128); paying kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(2) (Counts 129-55 and 197-215); conspiracy to launder money, in violation of 18 U.S.C. § 1956(h) (Count 216); money laundering (promotion), in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (Counts 217-69); money laundering (proceeds), in violation of 18 U.S.C. § 1957 (Counts 186-95); conspiracy to impede or impair the functions of the Department of

Health and Human Services (hereafter HHS), in violation of 18 U.S.C. § 371 (Count 314); conspiracy to obstruct justice, in violation of 18 U.S.C. § 371 (Count 315); obstruction of justice, in violation of 18 U.S.C. § 1503 (Count 316); and contempt of court, in violation of 18 U.S.C. § 401(3) (Count 319) (Case No. 04-60186-CR-UNGARO, DE # 3).[1]

Pursuant to a written plea agreement, Mignott pled guilty to Count 1 (conspiracy to defraud the United States); Count 2 (making a false claim to Medicare); Count 128 (conspiracy to pay kickbacks); Count 216 (conspiracy to launder money); and Count 315 (conspiracy to obstruct justice) (Case No. 04-60186-CR-UNGARO, DE # 210 at para. 1). The government agreed to dismiss the remaining counts at sentencing (Case No. 04-60186-CR-UNGARO, DE # 210 at para. 2). Mignott also waived any right to appeal the sentence in the case or the manner in which it was imposed unless the sentence exceeded the maximum permitted by statute or was the result of an upward departure from the guideline range (Case No. 04-60186-CR-UNGARO, DE # 210 at para. 15).

Count 216, which is the only count at issue here, alleged, in pertinent part, that beginning in May 1999, and continuing to on or about March 2000, Mignott and others conspired to launder money in violation of 18 U.S.C. § 1956, by:

a) conducting and attempting to conduct financial transactions affecting interstate and foreign commerce which transactions involved the proceeds of Federal health care fraud, with the intent to promote the carrying on of Federal health care fraud, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i);

b) conducting and attempting to conduct financial transactions affecting

---

[1] Citations to Case No. 04-60186-CR-UNGARO refer to the record in the underlying criminal case.

2

interstate and foreign commerce which transactions involved the proceeds of Federal health care fraud, knowing that these transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of a Federal health care fraud, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and

c) conducting and attempting to conduct financial transactions affecting interstate and foreign commerce which transactions involved the proceeds of Federal health care fraud, knowing that these transactions were designed in whole or in part to avoid a transaction reporting requirement under Federal law, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(ii) (Case No. 04-60186-CR-UNGARO, DE # 3 at ¶72).

The Indictment further alleges the following object of the above conspiracy:

> It was the object of the conspiracy that the defendants would promote and perpetuate a scheme to defraud Medicare by paying kickbacks with the proceeds of the fraud scheme. It was further the object of the conspiracy that the defendant would attempt to conceal portions of proceeds of the scheme to defraud Medicare by transferring funds to overseas accounts, to accounts in nominee names, and by purchasing assets in nominee names. It was further an object of the conspiracy that the defendants would avoid and attempt to avoid financial transaction reporting requirements by structuring kickback payments made to patient recruiters.

(Case No. 04-60186-CR-UNGARO, DE # 3 at ¶73).

On February 28, 2005, the Court sentenced Mignott to 90 months of imprisonment, to be followed by three years of supervised release. The Court also ordered that Mignott was jointly and severally liable with his codefendants for restitution

in the amount of $8,043,729.35 (Case No. 04-60186-CR-UNGARO, DE # 276).²

On May 21, 2009, Mignott filed a motion to vacate (Case No. 04-60186-CR-UNGARO, DE # 387). The Clerk of the Court then issued a Notice of Correction which stated that the wrong CM/ECF event had been selected when the Motion was filed; and, which directed Movant to strike this motion and refile it conventionally, in accordance with the CM/ECF procedures (*Id.*, DE # 389). On May 29, 2009, in accordance with instructions from the Clerk of the Court, Mignott filed a notice striking the motion to vacate (*Id.*, DE # 390). Also on May 29, 2009, Mignott filed the instant Motion to Vacate (*Id.*, DE # 391).

## II. THE POSITIONS OF THE PARTIES

### A. Mignott's Position

Mignott contends that his conviction on Count 216, conspiracy to launder money, should be vacated and that he should be resentenced because : 1) pursuant to *United States v. Santos*, 553 U.S. 507, 128 S.Ct. 2020 (2008), he is actually innocent of this offense because the conduct which he admitted in pleading guilty on this Count does not violate 18 U.S.C. 1956(h); and, specifically, he contends there was no evidence that the proceeds were profits, and not gross receipts, of the underlying criminal activity (DE # 1 at 1, para. 10; DE # 2 at 4-6; DE # 7 at 2-9); and 2) Movant's guilty plea to Count 216 was not intelligently made because he did not know that the government had to prove, and he was not informed by his counsel, that he could not be guilty on that Count unless there was evidence that the proceeds were profits, and not gross receipts, of the underlying criminal activity (DE # 1 at 3, para. 10 -37; DE # 2 at 6-8; DE # 7 at 2-9).

---

² The sentence imposed resulted from a downward departure from a sentencing range of 108-135 months' imprisonment, pursuant to U.S.S.G. § 5.K1.1, due to Mignott's cooperation (Case No. 04-60186-CR-UNGARO, DE # 361 at 2).

4

Mignott also contends that *United States v. Demarest*, 570 F.3d 1232, 1241-42 (11th Cir.), *cert. denied*, 130 S.Ct. 421 (2009), which finds *Santos* strictly limited to its facts, is contrary to the holding in *Santos* (DE # 7 at 9-11).

### B.  The Government's Position

The government initially responds that the actual innocence exception does not apply because a) Mignott failed to challenge his guilty plea or raise his current argument before filing the instant motion; b) Mignott knowingly and voluntarily waived his right to appeal any sentencing issues, and, c) *Santos* does not apply to cases involving factual situations such as the instant one, where the proceeds involved were from health care fraud (DE # 6 at 10-13).  Relying on *United States v. Demarest*, 570 F.3d 1232, 1241-42 (11th Cir.), *cert. denied*, 130 S.Ct. 421 (2009), the government then contends that Movant's plea on Count 216 is valid because *Santos* does not apply to money laundering offenses involving the proceeds from health care fraud (DE # 6 at 13-16).

### III.  THE UNDERLYING FACTS[3]

The Medicare program was administered by the United States Department of

---

[3]  While ordinarily the facts recited at the plea colloquy would be relied upon, the record establishes that the transcript notes of the plea colloquy were destroyed in a hurricane. (Case No. 04-60186-CR-UNGARO, DE # 384, affidavit of Laura Foren). The facts stated in this Report and Recommendation are taken from the uncontested section of the United States' response entitled "The Offense Conduct" (DE # 6 at 5-10).  These facts track the language of both the underlying Indictment in this case, and the Presentence Investigation Report ("PSI") prepared by the Probation Office prior to the sentencing hearing.  A review of the record and the transcript of the sentencing hearing reflects that although Mignott objected to the calculation of his criminal history in the PSI, he did not challenge the facts contained in the PSI (04-601668-CR-UNGARO, DE ## 242, 383).  In connection with this Motion to Vacate, Mignott also relied on the facts alleged in Count 216 of the Indictment to support his position.  In his reply, Mignott did not dispute the government's version of the facts.  In any event, although the underlying facts put this dispute in context, the particular facts of this case do not alter the ultimate conclusion that the decision in *Santos* does not apply to money laundering charges where the specified unlawful activity is health care fraud.

Health and Human Services (HHS), through the Health Care Financing Administration (HCFA).  HHS, through HCFA, contracted with a "fiscal intermediary," First Coast Service, Inc., (First Coast), to administer the Medicare program as it related to Part A claims for skilled rehabilitation services in Florida, including physical, occupational and respiratory therapy.

The Medicare Part A program provided cost-based reimbursement to approved Comprehensive Outpatient Rehabilitation Facilities (CORFs) which rendered medically necessary skilled rehabilitation services to Medicare Part A beneficiaries pursuant to a physician's order.  In order for a CORF to qualify for reimbursement for skilled rehabilitation services provided to Medicare Part A beneficiaries, the services provided must have been ordered by a physician, must have been medically necessary, must have been rendered pursuant to a plan of treatment approved and signed by a physician and must have been rendered by a licensed therapist acting within the scope of their specialty.  CORFs sought reimbursement from Medicare by submitting claim forms known as "UB92s" listing the services provided to a particular beneficiary.  CORFs were then reimbursed based upon a percentage of the estimation of their actual cost for providing the claimed services.  At the end of their fiscal year, CORFs were required to file with Medicare a financial report known as a cost report.  In this report, CORFs were required to reconcile their actual allowable costs for providing the services billed to Medicare with the amounts received during the year based upon the submitted UB92s.  If a CORF received more reimbursement during the year than its actual authorized costs of provided qualified services, the CORF was required to reimburse that overpayment to Medicare.

The investigation which led to the instant indictment began as the result of

information received from First Coast that the principals of Florida Health Institute (FHI), Sample Road Rehabilitation Center (Sample Road) and Cresthaven Physical Therapy (Cresthaven) were defrauding the Medicare Program through the submission of false and fraudulent claims. These entities were operated as CORFs, and were owned and operated by Mignott and two co-defendants, Ricardo Choi and Elliot Housely. These three defendants were responsible for setting up the entities, paying kickbacks to assisted living facilities (ALFs) for patient referrals, paying several doctors for ordering the services despite the lack of medical necessity, paying patient recruiters for patient referrals, and for submitting fraudulent claims for the services to Medicare.

Cresthaven, Sample Road, and FHI were Florida corporations which had been issued Medicare provider numbers as CORFs. Codefendant Choi purchased Sample Road around May 13, 1999. Mignott and co-defendant Housely purchased Cresthaven around February 2, 1999. Mignott purchased FHI around June 9, 1999. These companies were authorized to submit claims to the Medicare Part A program for qualified skilled rehabilitation services provided to Medicare Part A beneficiaries. These companies submitted claims for Medicare payment and reimbursement through First Coast, in part, using the means of electronic claims submission. These companies operated as interrelated companies that often shared employees, therapists, doctors, patients and management. The individual owners shared in the combined profits of the three companies.

Between May 1999 and April 2000, Mignott and codefendants Choi, Housely and Craig Marks, who was the principal point of contact with several of the ALFs, entered into illegal kickback arrangements with owners and operators of ALFs for access to and referrals of the Medicare covered residents at the facilities. These kickbacks and bribes

were disguised as rental payments made pursuant to sham lease agreements between Sample Road, Cresthaven and/or FHI and the participating ALFs, including Jene's Retirement Living, Family Rest Home, Interamerican Boarding Home and La Covadoga Retirement Living.

Choi recruited co-defendants who acted as patient recruiters. They were paid a fee to locate Medicare beneficiaries not residing in ALFs who were willing to receive skilled therapy services or who were willing to allow the defendants to bill Medicare for non-rendered, non-qualifying and/or medically unnecessary skilled therapy services. In turn, the patient recruiters paid a fee to Medicare beneficiaries who were willing to participate in the scheme.

Between June 1999 and February 2000, Mignott and co-defendants Choi, Housely, and Marks also entered into illegal kickback arrangements with physicians wherein the physicians, who had no prior relationship with the patients, were paid a fee for ordering skilled therapy evaluations or services without the physicians' conducting proper medical evaluations of the patients to establish medical need for the skilled therapy evaluations or services.

Between May 1999 and March 2000, Mignott, Choi and Housely, along with the assistance of co-defendants and patient recruiters, grossly overstated the actual cost of providing pulmonary rehabilitation services and skilled therapy evaluations that were not performed pursuant to a valid prescription from a treating physician. They caused claims to be submitted to Medicare for services not performed, services forged, where no plan of treatment signed by a physician existed, for skilled therapy services involving non-qualifying exercise sessions billed as qualifying pulmonary rehabilitation services, and, caused claims to be submitted through multiple entities to avoid Medicare payment

caps on skilled therapy services.

Mignott, Choi and Housely also transferred money received from this scheme to overseas accounts and to accounts in nominee names in an attempt to conceal portions of the proceeds. These individuals would transfer to and through shell corporations, trust and nominee bank accounts, money received from Medicare. Mignott and co-defendants structured kickback payments by providing the patient recruiters and ALFs multiple checks in amounts less than $10,000, including making some of the checks payable to nominees or to multiple related companies, in an attempt to avoid the financial transaction reporting requirements concerning financial transactions involving more than $10,000. As a result of their actions, they caused approximately $6 million in Medicare proceeds to be transferred to nominee and offshore accounts in an attempt to conceal the money. This money was also used to pay kickbacks and bribes. evaluations and prescriptions.

During this time period, from March 1999 through February 2000, FHI billed Medicare $3,639,725 and received $2,357,105.11. Sample Road billed Medicare $7,037,125 and received $4,041,401.71. Cresthaven billed Medicare $2,591,862 and received $1,645,222.53. The total amount of loss to Medicare was $8,043,729.35.

IV. **LEGAL ANALYSIS**

A. **The Motion to Vacate Is Timely Filed**

At the outset, the undersigned notes that the parties agree there is no time-bar to this Court's consideration of the merits of the Motion to Vacate (DE # 6, Govt. Answer at 2).

Title 28, United States Code, Section 2255(f)(3) provides that a Motion to Vacate is timely filed if it is filed within one year from "the date on which the right asserted was

initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Mignott argues, and the Government agrees, that this section applies to issues of statutory construction such as the issue presented in the case at bar. The parties also agree that *Santos* is retroactively applicable to prior convictions. *United States v. Peter*, 310 F.3d 709, 711 (11th Cir. 2002) ("Decisions of the Supreme Court construing substantive federal criminal statutes must be given retroactive effect."); *Lomelo v. United States*, 891 F.2d 1512 (11th Cir. 1990) ("this circuit has made clear that 'a decision which determines that Congress never intended certain conduct to fall within the proscription of a criminal statute must necessarily be retroactive." *Belt v. United States*, 868 F.2d 1208, 1211 (11th Circ. 1989)."); *see King v. Keller,* No. 09-15357,  2010 WL 1337701 (11th Cir. Apr. 7, 2010) (stating that a claim under *Santos* appears to satisfy the retroactivity requirement since the "Santos opinion clearly construed a substantive federal criminal statute"). Thus the one-year time limitation began to run on June 2, 2008 (DE # 6, Govt. Answer at 2). *Dodd v. United States*, 545 U.S. 354, 360 (2005) (the one-year period of limitation set forth in section 2255 begins to run on the date the Supreme Court initially recognizes the right asserted). Since this Motion to Vacate was filed on May 29, 2009, it falls within this one-year time frame.

### B. Mignott is Not Entitled to Relief On the Merits

#### 1. *Introduction*

Mignott contends that his conviction on Count 216, which charges conspiracy to commit money laundering, should be vacated pursuant to *United States v. Santos*, 553 U.S. 507, 128 S.Ct. 2020 (2008); and, that he should be resentenced on the remaining charges to which he pleaded guilty. He argues that he is actually innocent of Count 216

since the conduct which he admitted in pleading guilty on this Count does not violate 18 U.S.C. § 1956(h).  To meet his burden regarding this argument, Mignott contends that, under *Santos,* in order to convict a defendant for laundering the proceeds of a health care fraud offense, the government must prove that the proceeds were profits of the illegal activity rather than merely gross receipts.  In support of his position, Mignott also contends that this Court should not follow the decision of the Eleventh Circuit Court of Appeals in *United States v. Demarest*, 570 F.3d 1232, 1241-42 (11th Cir.), *cert. denied*, 130 S.Ct. 421 (2009), which strictly limited *Santos* to its facts, because *Demarest* is contrary to the holding in *Santos* (DE # 7 at 9-11).

      Recognizing that if he satisfies this initial hurdle, he must still establish that he is "actually innocent" of the charges, Mignott contends there was no evidence that the money which he conspired to launder constituted profits, and not gross receipts, stemming from the underlying criminal activity.  He therefore requests an evidentiary hearing in which the government would be required to prove that the money involved in the offense was profits.

      As explained in more detail below, however, relying on *Demarest* and subsequent cases, the undersigned finds that the term "proceeds" includes gross receipts in the context of health care fraud offenses.  Stated another way, a conspiracy to launder money which constitutes the gross receipts of an underlying medicare fraud violates 18 U.S.C. § 1956(h).[4]  Thus Mignott has failed to establish the first element necessary to entitle him to relief.  Given this interpretation, it is also clear that the actual innocence exception to his procedural default does not apply, and there is no need for an

---

[4] Movant apparently recognizes that *Demarest* forecloses his argument, but contends that *Demarest* was "contrary to, and an unreasonable application of Supreme Court precedent" (DE # 7 at 9).  This Court, however, is bound by Eleventh Circuit precedent.

11

evidentiary hearing.[5]

### 2. *The Application of United States v. Santos To This Case*

In *United States v. Santos*, 553 U.S. 507, 128 S.Ct. 2020 (2008), the United States Supreme Court addressed the meaning of the word "proceeds" as used in 18 U.S.C. § 1956(a)(1)(A)(i), which makes it a crime for someone to, "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conduct[ ] or attempt[ ] to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . . with the intent to promote the carrying on of a specified unlawful activity." In *Santos*, the money laundering

---

[5] In the context of a section 2255 motion to vacate a defendant's sentence or conviction, "actual innocence" is a procedural gateway through which the Movant must pass in order to have the court consider the merits of an otherwise defaulted claim. *See Schulp v. Delo*, 513 U.S. 298, 314-15 (1995); *United States v. Montano*, 398 F.3d 1276 1284 (11th Cir. 2005). In *Bousely v. United States*, 523 U.S. 614 (1998), the Supreme Court recognized that a prisoner may establish that he is "actually innocent" of a crime for the purpose of passing through the gate and having a defaulted claim considered on the merits where there has been an intervening change in the law. Bousley had pled guilty to using a firearm during and in relation to a drug offense under 18 U.S.C. § 924(c) when he merely possessed the firearm. Subsequently, the Supreme Court rejected the broad reading of "use" and held that a conviction under this section required active employment of the firearm during the crime. Thus, Bousley stood convicted of an act that the law did not make criminal. *Id.* at 620. While Bousley had procedurally defaulted his claim by not raising it on direct review, the Court remanded the case so that the lower courts could consider whether Bousley was actually innocent based on the intervening change in the law. In doing so, the Court emphasized that actual innocence meant factual innocence, and not legally insufficient evidence. *Id.* at 623-24. Bousley bore the burden of proving that he was factually innocent and that, in light of all the evidence, it was more likely than not that no reasonable juror would have convicted him. *Id.* at 623. The government would be allowed to present any admissible evidence of Bousley's guilt to rebut his claim, and was not limited to the evidence presented during the plea colloquy or to evidence that would likely have been admitted before the intervening legal decision. *Id.* at 624.
    As explained *infra.*, the actual innocence exception does not apply here because *Santos* did not change the law under which Mignott pled guilty and was convicted, in that Mignott pled guilty to conspiracy to launder money which was the proceeds from Medicare fraud, and *Santos* does not apply to money laundering offenses involving the proceeds of health care fraud.

transaction at issue was an illegal lottery operator's (Santos), payments to his winners and as commissions and salaries to his runners, utilizing the receipts from his lottery operation, in violation of 18 U.S.C. § 1955. *Santos*, 128 S.Ct. at 2022-23. A plurality of four Justices ruled that the word "proceeds" as used in the money laundering statute meant profits and not, as the United States had argued by in *Santos*, gross receipts. *Id*. at 2023-25. As part of their reasoning, the four Justices noted that, absent such an interpretation of "profits," the United States could charge money laundering in cases where promotion was a "normal part" of the underlying specified unlawful activity, like *Santos*. *Id*. at 2026-28. The four Justices then explained that in such cases, the money laundering charge would "merge" with the proceeds-generating crime, and in essence, a separate conviction would occur for the same crime. *Id*. at 2026-27.

Justice Stevens wrote a concurring opinion ruling "proceeds" meant "profits" in the context of some specified unlawful activities, and gross receipts as to others, and that, with regard to the gambling offenses at issue in *Santos*, proceeds meant profits. *Id.* at 2031-33. Four Justices dissented, holding that the word "proceeds", as used in 18 U.S.C. § 1956(a)(1)(A)(i), meant gross receipts. *Id.* at 2034-44.

In *United States v. Demarest*, 570 F.3d 1232, 1241-42 (11th Cir.), *cert. denied*, 130 S.Ct. 421 (2009) the Eleventh Circuit Court of Appeals discussed the significance of *Santos*, and strictly limited its effect:

> *Santos* has limited precedential value. Three parts of Justice Scalia's four-part opinion are for a plurality of justices, and those parts do not state a rule for this case. See *Santos*, 128 S.Ct. at 2022-45. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds....' " *Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)). The narrow holding in *Santos*, at most, was that the gross receipts of an unlicensed gambling operation were not

13

"proceeds" under section 1956. . . .

570 F.3d at 1242.

Since there was no evidence that the funds Demarest laundered were gross receipts of an illegal gambling operation, and the evidence established that the funds Demarest laundered were the proceeds of an enterprise engaged in illegal drug trafficking, the Eleventh Circuit held that *Santos* did not invalidate Demarest's conviction.

The Eleventh Circuit reiterated its limitation of *Santos* to illegal gambling operations in *United States v. Jennings*, 599 F.3d 1241, 1252 (11th Cir. 2010).  In *Jennings*, the Court summarily rejected the defendant's claim that, because the government failed to prove the money at issue was the profits of illegal activity as opposed to receipts, he could not be convicted of money laundering in connection with fraud and conspiracy convictions arising from a scheme to sell fraudulent workers' compensation insurance.  In reaching this result, the Court emphasized that under pr-existing Eleventh Circuit caselaw, proceeds was defined as "'what is produced by or derived from something . . . by way of total revenue, the total amount brought in.'  This definition includes receipts as well as profits." 599 F.3d at 1252, *quoting United States v. Silvestri*, 409 F.3d 1311, 1333 (11th Cir. 2005).

Similarly, in *King v. Keller*, No. 09-15357, 2010 WL 1337701 at *3 (11th Cir. Apr. 7, 2010), the Eleventh Circuit held that *Santos* did not apply where the defendant's "money laundering convictions were based on his participation in 'a cash rental "ponzi scheme" and a related treasury bill leasing program.'" Again, the Court emphasized, "We have interpreted *Santos* to apply only to money laundering schemes involving an illegal gambling organization."  *Id.* at *3.

14

Numerous other cases decided since *Santos* have also rejected the application of *Santos* to money laundering offenses stemming from crimes other than gambling.[6] *See, e.g., United States v. Morris*, No. 6:09-16-S-DCR, 2010 WL 1049936 (E.D. Ky. Mar. 19, 2010) (*Santos* does not apply where the predicate offenses were bribery and extortion); *United States v. Poulin,* No. 2:09cr49, 2010 WL 538722 at *14 (E.D. Va. Feb. 12, 2010) (*Santos* does not apply to health care fraud offenses); *Arnaiz v. Hickey*, No. CV208-97, 2009 WL 2971638, at 2-3 (S.D. Ga. Sept. 16, 2009) (*Santos* is limited to gambling cases and profits test does not apply where the offense involves laundering of receipts of Medicare fraud); *United States v. Prince*, 627 F.Supp. 863, 868-72 (W.D. Tenn. 2008) (*Santos* is limited to gambling cases and profits test does not apply where the offense involves laundering of receipts of health care fraud offense); *Wooten v. Cauley*, No. 09-CV-67-HRW, 2009 WL 3034893, at 6-7 (E.D. Ky. Nov. 16, 2009) (*Santos* is limited to gambling cases and profits test does not apply where the offense involves laundering of receipts of stolen property).

Thus, because the limited holding in *Santos* does not apply to Mignott's conviction for conspiring to launder money which is the proceeds of Medicare fraud, he is not entitled to relief.[7]

---

[6] Although it does not affect the outcome of this case, the undersigned notes that *Santos* has now been superseded by statute since on May 20, 2009, Congress amended 18 U.S.C. § 1956 to explicitly define "proceeds" to include "gross receipts." 18 U.S.C. §1956(c)(9); *See United States v. Morris*, No. 6:09-16-S-DCR, 2010 WL 1049936 (E.D. Ky. Mar. 19, 2010).

[7] In any event, even if *Santos* did apply to Mignott's conviction, it appears that he would still not be entitled to relief as he conceded in his Motion for Downward Departure that he had laundered at least $381,000.00 in profits from the Medicare fraud, and therefore the laundered money was not just gross receipts (Case No. 04-60186-CR-UNGARO, DE # 256 at 5-6). Mignott has not supplied any evidence to support the proposition that only gross receipts were involved in the money laundering offenses which are alleged as objects of the conspiracy in the case at bar. Therefore, even

### C. Mignott Intelligently Entered A Guilty Plea To Count 216 And Did Not Receive Ineffective Assistance of Counsel In Entering That Plea

The above rejection of Mignott's interpretation of *Santos* dictates the rejection of Mignott's remaining claims. Mignott contends that he did not intelligently plead guilty to Count 216 because he did not know that he could not be guilty of Count 216 unless there was evidence that the laundered money mentioned in Count 216 constituted profits as opposed to gross receipts. Mignott also implies that his counsel provided ineffective assistance because counsel did not inform Mignott that he could not be guilty of Count 216 unless there was evidence that the laundered money mentioned in Count 216 constituted profits, and not gross receipts. However, as discussed above, Mignott's plea to Count 216 was intelligently made because he could be guilty if the laundered money mentioned in the Count constituted gross receipts. Because Mignott's plea was intelligently made, he cannot show that he received ineffective assistance of counsel.

In order to prevail on a claim of ineffective assistance of counsel, Mignott must establish that his representation by counsel below fell below an objective standard of reasonableness, and that, but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984); *Glover v. United States*, 531 U.S. 198 (2001) (applying two-prong *Strickland* test to sentencing errors, and finding prejudice where the error resulted in any increased period of incarceration); *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). The burden of proof for demonstrating ineffective assistance of counsel remains on Mignott throughout the habeas corpus proceeding. *Roberts v.*

---

applying the rationale of *Santos* to this case, Mignott has not shown that he is actually innocent of Count 216, and he is not entitled to relief.

16

*Wainwright,* 666 F.2d 517, 519 n. 3 (11th Cir. 1982).  Judicial scrutiny of trial counsel's performance is highly deferential; Mignott must overcome the presumption that, under the circumstances, the challenged action might be considered sound strategy. *Strickland v. Washington,* 466 U.S. 668, 689 (1984).  In analyzing ineffective assistance claims, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance.  *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1991), *citing Strickland,* 466 U.S. at 689.

Mignott has provided no evidence either that his plea was unintelligently made or that he received ineffective assistance from his counsel below.  As previously stated, as to Count 216, the government did not have to prove that the laundered money constituted profits, as opposed to gross receipts.  Moreover, as also previously stated, Mignott had conceded in his sentencing memorandum that some of the proceeds were profits.  Therefore, Mignott has not shown that his guilty plea to Count 216, made pursuant to a plea agreement, was unintelligently made, and he has also not shown that he received ineffective assistance of counsel in that counsel advised him to plead guilty to Count 216.

### D.  Mignott Is Not Entitled to an Evidentiary Hearing on his Motion

In his reply, Mignott requests an evidentiary hearing to ascertain whether sufficient evidence exists to determine whether the proceeds involved in Count 216 were profits (DE # 7 at 11-12).  However, Mignott is not entitled to an evidentiary hearing because *Santos* does not apply to this case.  *See Smith v. Singletary*, 170 F.3d 1051, 1053-54 (11th Cir. 1991).[8]

---

[8] **In any event, even if *Santos* applied, it appears that Mignott would not be entitled to relief or an evidentiary hearing because, as previously stated, the record conclusively shows, through the facts alleged in Mignott's own Motion for Downward Departure, that**

## V.  CONCLUSION

Therefore, for the reasons stated above, it is hereby

**RECOMMENDED** that Mark Anthony Mignott's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Prisoner In Federal Custody, be **DENIED**.

The parties will have fourteen days from the date of service of this Order within which to file written objections, if any, for consideration by the Honorable Ursula Ungaro, United States District Judge.  Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein.  *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988).

**DONE AND SUBMITTED** in chambers in Miami, Florida, on May 3, 2010.

*Andrea M. Simonton*
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies provided via CM/ECF to:
The Honorable Ursula Ungaro
   United States District Judge
All counsel of record

---

at least $381,000 of the proceeds involved in Count 216 were profits rather than merely gross receipts (Case No. 04-60186-CR-UNGARO, DE # 256 at 5-6).